1
2
3
4
5
6
7
8
9
10             UNITED STATES DISTRICT COURT
11             SOUTHERN DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| AMY MAY,<br><br>      Plaintiff,<br><br>  vs.<br><br><br>BRUCE K. BRUNTON,<br><br>       Defendant. | CASE NO: 12-CV-2860 W (MDD)<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION TO STRIKE [DOC. 69], AND**<br><br>**(2) GRANTING-IN-PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES [DOC. 62]** |

20    Pending before the Court are Plaintiff's motion for attorney's fees (*Pl.'s Mot. Fees*
21 [Doc. 62]) and Plaintiff's motion to strike Defendant's expert declaration in support of
22 Defendant's opposition to Plaintiff's fee motion. (*Pl.'s Obj. & Mot. Strike* [Doc. 69].) The
23 Court decides the matter on the papers submitted and without oral argument. See Civ.
24 L.R. 7.1(d.1). For the reasons discussed below, the Court **DENIES** Plaintiff's motion to
25 strike [Doc. 69] and **GRANTS-IN-PART** Plaintiff's motion for attorney's fees [Doc. 62].
26 //
27 //
28 //

12cv2860w

# I.   BACKGROUND

On November 30, 2012, Plaintiff Amy May filed suit against her now-former landlord, Defendant Bruce K. Brunton, alleging discrimination and harassment on the basis of sex in violation of the federal Fair Housing Act and related state laws. (*Compl.* [Doc. 1] ¶¶ 1, 6–35.) On January 18, 2013, Defendant filed his answer along with two counterclaims against Plaintiff for: (1) breach of contract, and (2) defamation. (*See Answer & Counterclaim* [Doc. 5].) On February 11, 2013, Plaintiff moved to dismiss Defendant's breach of contract counterclaim. (*See MTD Counterclaim* [Doc. 8].) Plaintiff also moved—under California Code of Civil Procedure § 425.16 (California's "anti-SLAPP" statute)—to strike Defendant's counterclaim for defamation. (*See Mot. Strike Counterclaim* [Doc. 9].)

Thereafter, the parties filed, and the Court subsequently granted, a joint motion to dismiss Defendant's counterclaim for breach of contract. (*See March 15, 2013 Order* [Doc. 16].) The Court then dismissed Defendant's counterclaim for defamation after Defendant filed a notice of non-opposition to Plaintiff's motion to strike. (*See April 5, 2013 Order* [Doc. 24].) In the wake of that litigation, Plaintiff filed a motion for attorney's fees under the anti-SLAPP statute for work done by the Legal Aid Society of San Diego ("LASSD") on Plaintiff's case. (*See Mot. Anti-SLAPP Fees* [Doc. 31].) On August 2, 2013, the Court granted the motion and awarded Plaintiff attorney's fees in the amount of $11,660.00. (*August 2, 2013 Order* [Doc. 34].)

On April 10, 2013, Magistrate Judge Mitchell D. Dembin held the telephonic case management conference. (*See CMC Minute Entry* [Doc. 28].) The following day, the case management order regulating discovery and other pretrial proceedings issued. The order indicated that all expert disclosures required by Federal Rule of Civil Procedure 26(a)(2) be served on all parties on or before August 26, 2013, and that rebuttal disclosures within the meaning of Rule 26(a)(2)(D)(ii) be disclosed on or before September 26, 2013. (*CMC Order* [Doc 29] ¶ 2.) The order further indicated that all discovery be completed by all parties on or before October 28, 2013. (*Id.* ¶ 3.)

Thereafter, on May 30, 2014, Judge Dembin held a settlement conference, wherein the parties agreed to settle the case. (*See, e.g.*, *Notice of Settlement* [Doc. 56].) The terms of the settlement agreement provided that: (1) Defendant or his insurer would pay $40,000 to Plaintiff by June 30, 2014; (2) Defendant or his insurer would pay Plaintiff's reasonable attorney's fees and costs to be fixed by the Court in the absence of an agreement as to the amount of such fees and costs;[1] and (3) Defendant would cease and desist from the operation or management of any investment rental dwelling, and would "retain a professional manager, certified as a California Certified Residential Manger by the California Apartment Association to operate and manage his rental dwellings, as further described in the parties' settlement agreement." (*Jt. Appl. & Stip.* [Doc. 60] ¶¶ 2–4; *see also Rep. Tr. of Settlement* [Doc 62-3].) On July 29, 2014, Plaintiff filed the instant motion for attorney's fees. (*See Pl.'s Mot. Fees*; *Mem. P&A ISO Pl.'s Mot. Fees* [Doc. 62-1].) On September 15, 2014, Defendant filed his opposition and supporting expert declaration challenging the total amount of fees sought by Plaintiff. (*Def.'s Opp'n* [Doc. 66].) Subsequently, on October 10, 2014, Plaintiff filed her reply and concurrent motion to strike Defendant's expert declaration. (*See Pl.'s Reply* [Doc. 70]; *Pl.'s Obj. & Mot. Strike*.)

## II.   LEGAL STANDARD

Under the Fair Housing Act's fee-shifting provision, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2).[2] A "prevailing party" for the purposes of attorney's

---

[1] The agreement set a deadline of July 29, 2014 for Plaintiff to file her motion for attorney's fees and costs. (*Jt. Appl. & Stip.* [Doc. 60] ¶ 3.) Plaintiff filed her motion on that date. In addition, the agreement provided that "Defendant retains all rights to contest the amount of, but not the entitlement to, an award of attorneys' fees and costs to Plaintiff." (*Id.*) The agreement further indicated that "[t]he decision of the Court" on the issue of reasonable fees and costs "shall be binding and no party may appeal." (*Id.*)

[2] Plaintiff also seeks attorney's fees under California law. (*Mem. P&A ISO Pl.'s Mot. Fees* 5:21–6:8.) Under California Government Code § 12989.2, a court may award reasonable attorney's fees and costs to a prevailing party in "a civil action brought under Section 12981 or 12989.1, if the

1  fees is a party who "succeed[s] on any significant issue in litigation which achieves some

2  of the benefit the parties sought in brining suit." Hensley v. Eckerhart, 461 U.S. 424,

3  433 (1983) (internal quotation marks omitted).[3]  Stated differently, "a plaintiff 'prevails'

4  when actual relief on the merits of his claim materially alters the legal relationship

5  between the parties by modifying the defendant's behavior in a way that directly benefits

6  the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111–12 (1992) (citations omitted).

7       Initially, "[t]he fee applicant bears the burden of documenting the appropriate

8  hours expended in the litigation and must submit evidence in support of those hours

9  worked." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing Hensley,

10  461 U.S. at 433, 437).  "The party opposing the fee application has a burden of rebuttal

11  that requires submission of evidence to the district court challenging the accuracy and

12  reasonableness of the hours charged or the facts asserted by the prevailing party in its

13  submitted affidavits."  Id. at 1397-98 (citing Blum v. Stenson, 465 U.S. 886, 892 n.5

14  (1984); Toussaint v. McCarthy, 826 F.2d 901, 904 (9th Cir. 1987)).  Ultimately, "[i]t

15  remains for the district court to determine what fee is 'reasonable.'"  Hensley, 461 U.S.

16  at 433.

17

18  court finds that a discriminatory housing practice has occurred." Cal. Gov't Code § 12989.2. Similarly,

19  California Civil Code § 52 allows for an award of attorney's fees against culpable defendants in certain
    discrimination suits.  Cal. Civ. Code § 52(a), (b)(3).  Because attorney's fees under these state law

20  provisions are calculated according to the same lodestar method as 42 U.S.C. § 3613(c)(2), the Court's
    analysis of the reasonableness of Plaintiff's requested fees is equally applicable under federal and

21  California law.  See Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1112 (9th Cir. 2014) (citing

22  Ketchum v. Moses, 24 Cal. 4th 1122 (2001)); Muniz v. United Parcel Serv., Inc., 738 F.3d 214 (9th Cir.

23  2013).

24       [3] In Hensley, the Supreme Court dealt with a "prevailing party" seeking to recover attorney's fees

25  under 42 U.S.C. § 1988.  461 U.S. at 424.  However, courts addressing the same issue under § 3613
    may rely on cases interpreting § 1988, because "fee-shifting statutes' similar language is 'a strong

26  indication' that they are to be interpreted alike."  Indep. Fed'n of Flight Attendants v. Zipes, 491 U.S.

27  754, 758 n.2 (1989) (citations omitted); see also Hensely, 461 U.S. at 433 n.7 ("The standards set forth
    in this opinion are generally applicable in all cases in which Congress has authorized an award of fees

28  to a 'prevailing party.'"); Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 826 (9th
    Cir. 2001).  Moreover, 42 U.S.C. § 3602(o) explicitly states that "'[p]revailing party' has the same
    meaning as such term has in section 1988 of this title."

1    Generally, a court begins its calculation of reasonable attorney's fees using the
2    "loadstar" method, which calculates the product of the number of hours reasonably
3    expended and a reasonable hourly rate.  Hensley, 461 U.S. at 433; McGrath v. County
4    of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).  The court may then make adjustments to
5    the lodestar, if necessary, to arrive at a reasonable fee.  Blum, 465 U.S. at 888; Hensley,
6    461 U.S. at 434–37.  Although the court "has a great deal of discretion in determining
7    the reasonableness of the fee," the court also must provide a "'clear explanation of its
8    reasons for the fee award.'"  Gates, 987 F.2d at 1398 (quoting Hensley, 461 U.S. at 437).
9    "[A] brief explanation of how the court arrived at its figures will do."  Cunningham v.
10   County of Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988).

11

12   **III.   DISCUSSION**

13   In her motion, Plaintiff seeks a total of $101,615.00 in fees for work completed
14   by her attorneys Christopher Brancart, of Brancart & Brancart, and Branden Butler, of
15   LASSD.[4] (*See Mem. P&A ISO Pl.'s Mot. Fees*.)  This amount also includes work completed
16   by Mr. Brancart's paralegal, Nathan Gardner.  (*See, e.g., id.* at 7:1–19; 14:7–10.)  In
17   addition to these fees, Plaintiff seeks costs in the amount of $4,941.13.[5]  Moreover, in
18   her reply, Plaintiff seeks an additional $9,102.00 in fees for time spent by her attorneys
19   in "responding to [D]efendant's opposition, including attempting to subpoena
20   information from defense counsel and [D]efendant's expert and preparing th[e] reply

21

22   _____

[4] This figure is based on: (1) 149.6 hours of work by Mr. Brancart at $450.00 per hour; (2) 110.1
23   hours of work by Mr. Butler at $285.00 per hour; and (3) 30.7 hours expended by Mr. Gardner at
24   $95.00 per hour.  (*Mem. P&A ISO Pl.'s Mot. Fees* 7:1–19, 17:16–20; *see also Brancart Decl.* [Doc. 62-2];
*Butler Decl.* [Doc. 62-9].)  The initial number of hours sought have been voluntarily reduced by 7.5% "to
25   account for any duplication of effort or time not reasonably spent."  (*See Mem. P&A ISO Pl.'s Mot. Fees*
7:1–8:3.)  After calculating that reduction, Mr. Brancart's total number of hours sought has been
26   augmented by 13 hours for his work on the instant motion.  Similarly, Mr. Butler seeks an additional
27   hour for work on the instant motion.  (*See, e.g., id.* at 17:9–14.)

[5] This figure represents the aggregate total costs that Plaintiff seeks in her motion.  It represents
28   costs to Mr. Brancart's firm in the amount of $2,931.45 and costs to LASSD in the amount of
$2,009.68.  (*See, e.g., Mem. P&A ISO Pl.'s Mot. Fees* 17:18–20.)

1    brief."[6] (*Pl.'s Reply* 9:6–9.)  Mr. Butler also seeks an additional $176.00 in costs incurred

2    while working on Plaintiff's reply.  (*See id.* at 9:22–23 (requesting $2,185.68 instead of

3    the $2,009.68 in costs sought in the fee motion).)  Plaintiff's motion and reply include

4    billing records and declarations in support of the amounts that she seeks.

5          Defendant, for his part, does not dispute that Plaintiff is the prevailing party, or

6    that Plaintiff is entitled to reasonable attorney's fees.  (*See Def.'s Opp'n* 1:19–21; *Jt. Appl.*

7    *& Stip.* ¶ 3; *Rep. Tr. of Settlement* 3:1–5.)  Notably, Defendant also does not dispute the

8    reasonableness of the hourly compensation rates proffered by Plaintiff's counsel, that

9    Plaintiff is entitled to costs, or the reasonableness of the costs outlined in Plaintiff's

10   motion.  The only contested issue is the reasonableness of the hours billed by Plaintiff's

11   counsel.  (*Def.'s Opp'n* 9:2; *Pl.'s Reply* 1:25–27.)  Defendant submits the following

12   arguments in his attempt to demonstrate the unreasonableness of the requested fees: (1)

13   the fees sought are unreasonable in relation to the results Plaintiff's counsel have

14   obtained; (2) documentation of the requested fees is improper; (3) the requested fees are

15   excessive due to overstaffing; and (4) the time Mr. Brancart spent on the anti-SLAPP

16   motion is not compensable.  (*See Def.'s Opp'n.*)

17

18   **A.    Plaintiff's Objection and Motion to Strike**

19         In responding to the instant motion, Defendant submitted a timely opposition.

20   (*See Def.'s Opp'n.*)  Defendant appended to his opposition a document entitled "Rule 26

21   Disclosure and Declaration of Robert K. Sall."  (*See Sall Decl.* [Doc. 66-1] ¶¶ 1–2.)  In the

22   declaration, Mr. Sall purports to be an expert witness and provides a series of opinions

23   in accordance with his engagement as such.  (*See generally id.*)  Plaintiff, in replying to the

24   opposition, has filed a concurrent objection and motion to strike Mr. Sall's declaration.

25   (*See Pl.'s Obj. & Mot. Strike.*)  Before reaching the merits of Plaintiff's underlying fee

26   motion, the Court will first address Plaintiff's motion to strike.  For the following

27

28   _____

    [6] This figure is based on: (1) 16.3 hours of work by Mr. Brancart at $450.00 per hour; and (2) 6.2 hours of work by Mr. Butler at $285.00 per hour.  (*See, e.g., Pl.'s Reply* 9:10–18.)

12cv2860w

1   reasons, the Court **DENIES** Plaintiff's objection to and concurrent motion to strike Mr.
2   Sall's declaration.

3       Under Federal Rule of Civil Procedure 26(a)(2)(A), a party must disclose the
4   identity of each expert witness "it may use *at trial* to present evidence." Fed. R. Civ. P.
5   26(a)(2)(A) (emphasis added). Such disclosures must be "accompanied by a written
6   report —prepared and signed by the witness—if the witness is one retained or specially
7   employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Rule
8   26(a)(2)(D) further provides that parties "must make these disclosures at the time and in
9   the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A party who fails to
10  adhere to the court's *pre-trial* scheduling order is subject to sanctions under Rule 16(f)
11  and Rule 37(c).

12      Plaintiff argues that the Court should, under Rule 37(c), strike Mr. Sall's
13  declaration because it comes after the August 26, 2013 deadline for Rule 26(a)(2)
14  disclosures contained in Judge Dembin's scheduling order setting *pre-trial* deadlines. (*See*
15  *Pl.'s Obj. & Mot. Strike* 4:10–5:3.) However, Plaintiff does not cite, and the Court's
16  research has not uncovered, any authority for the proposition that Rule 37(c) applies in
17  the context of a post-settlement motion for attorney's fees. Here, Plaintiff's claims have
18  been settled pursuant to the terms of the above-described settlement agreement. (*See Jt.*
19  *Appl. & Stip.*; *Rep. Tr. of Settlement*.) In the wake of that agreement, the Court vacated the
20  pre-trial conference. (*See June 24, 2014 Order* [Doc. 59].) The sole issue remaining in this
21  case is the ambit of Plaintiff's reasonable attorney's fees. It follows that the purpose of
22  Rule 26(a)(2)—which was designed to prevent ambush *at trial*—is not implicated here. <u>See</u>
23  <u>Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico</u>, 248
24  F.3d 29, 35 (1st Cir. 2001).

25      Without more, the Court cannot find that Defendant violated Rule 26, or that
26  Rule 37 sanctions should now be applied to preclude Mr. Sall's declaration.[7] Because

27  ─────────────────

28      [7] Although Defendant refers to Sall's declaration as a "Rule 26 Disclosure," the
    declaration appears to relate to Rule 26 only insofar as its contents match the requirements of

1  Plaintiff has had an opportunity to reply to Defendant's opposition and to Mr. Sall's

2  declaration in support thereof, Plaintiff does not appear to have suffered any prejudice.

3  (*See Pl.'s Reply*.) Therefore, in light of the above, the Court **DENIES** Plaintiff's objection

4  to and motion to strike Mr. Sall's declaration.

5

6         **B.**    <u>Reasonableness of Fees in Relation to Results Obtained</u>

7        That a plaintiff is deemed a "prevailing party" for the purposes of a fee-shifting

8  provision says little about the reasonableness of the fees sought. <u>See</u> <u>Hensley</u>, 461 U.S.

9  at 424. In <u>Hensley</u>, the Supreme Court set forth various standards that "are generally

10  applicable in all cases in which Congress has authorized an award of fees to a 'prevailing

11  party.'" <u>Id.</u> at 433 n.7. One such standard requires courts to "focus on the significance

12  of the overall relief obtained by the plaintiff in relation to the hours reasonably expended

13  on the litigation." <u>Id.</u> at 435. The Court further emphasized this point in holding that

14  "the extent of a plaintiff's success is a crucial factor that the district courts should

15  consider carefully in determining the amount of fees to be awarded." <u>Id.</u> at 438 n.14.

16  If a plaintiff achieves only partial or limited success, the lodestar figure "may be an

17  excessive amount." <u>Id.</u> at 436.

18        Defendant contends that Plaintiff's attorneys achieved only limited success in

19  pursuing Plaintiff's claims. In support of this argument, Defendant cites a number of

20  cases and points to the fact that "Plaintiff only received $40,000 in settlement for her

21  claims." (*See Def.'s Opp'n* 10:6–9.) Accordingly, Defendant concludes that the fees

22  sought are not commensurate with the extent of Plaintiff's success. (*See id.* at 9:1–10:9.)

23  Plaintiff, on the other hand, contends that the parties' settlement agreement represents

24  the relief she sought in her complaint. (*Pl.'s Reply* 2:8–10.) She claims that her attorneys

25  obtained "significant" and "excellent" results, as opposed to merely partial or limited

26  success. (*See Mem. P&A ISO Pl.'s Mot. Fees* 8:4–26; *Pl.'s Reply* 2:3–4.) Thus, Plaintiff avers

27  that the quantity of time spent on her case, measured against the results obtained, was

28

Rule 26(a)(2)(B)(i)–(vi).  (*See Sall Decl.*)

1   reasonable.  (*Id.* at 8:24–26.)

2       Defendant's arguments fail to persuade for three reasons.  First, the cases to which
3   Defendant cites are not applicable here.  For instance, <u>Farrar v. Hobby</u> involved a civil
4   rights plaintiff who obtained a nominal damages award of one dollar after litigating his
5   case for ten years.  506 U.S. 103 (1992).  The Supreme Court ultimately declined to
6   award the plaintiff *any* attorney's fees.  <u>Id.</u> at 115 (holding that "[w]hen a plaintiff
7   recovers only nominal damages because of his failure to prove an essential element of his
8   claim for monetary relief, the only reasonable fee is usually no fee at all") (citations
9   omitted).  To say that Plaintiff's $40,000 pecuniary recovery in this case is merely
10  "nominal" would, at best, be a mischaracterization.  Furthermore, <u>McCown v. City of</u>
11  <u>Fontana</u> is also inapplicable here.  565 F.3d 1097 (9th Cir. 2008).  <u>McCown</u> involved a
12  plaintiff who, after having most of his claims dismissed on summary judgment, "received
13  $20,000 in damages as part of a settlement agreement for his single remaining claim, *and*
14  *no other relief*."  <u>Id.</u> at 1104 (emphasis added).  Here, all of Plaintiff's claims were still
15  intact at the time of settlement, and Plaintiff obtained injunctive relief in addition to her
16  five-figure damages award.

17      Second, Plaintiff has proffered evidence that her non-pecuniary award is of
18  considerable import.  (*See Brancart Decl.* ¶ 29; *Loy Decl.* [Doc. 62-7] ¶ 11.)  Defendant, on
19  the other hand, does not adequately explain or otherwise provide evidence in support
20  of his assertion that the fees requested are not reasonably related to *all* the relief Plaintiff
21  obtained in settling her claims.  See <u>Gates</u>, 987 F.2d at 1397–98 ("The party opposing
22  the fee application has a burden of rebuttal that requires submission of evidence to the
23  district court challenging the accuracy and reasonableness of the hours charged or the
24  facts asserted by the prevailing party in its submitted affidavits.").  Rather, in failing to
25  address Plaintiff's non-pecuniary relief, Defendant seems to have concluded that such
26  relief is worthless.  (*See, e.g., Def.'s Opp'n* 10:6–7 (stating that "Plaintiff only received
27  $40,000 in settlement for her claims").)

28  //

1      Third, Defendant's contention that "no more than approximately $40,000 should

2 reasonably be awarded in attorney's fees [in this case]" is inapposite.  (*See Def.'s Opp'n*

3 6:20–22.)  This strict proportionality argument is inconsistent with the relevant case law.

4 <u>See, e.g.</u>, <u>McCown</u>, 565 F.3d at 1104 (explaining that a "strict test of proportionality" is

5 inappropriate "because it fails to recognize the nature of many, if not most, civil rights

6 cases, in which damages may be limited by law, regardless of the importance of the civil

7 rights at issue") (citing <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 576–78 (1986)).  The

8 Court recognizes the disparity between the $40,000 amount and the amount that

9 Plaintiff seeks in attorney's fees.  However, that factor is "only one of many factors that

10 [the] [C]ourt should consider in calculating an award of attorney's fees."  <u>Rivera</u>, 477

11 U.S. at 574.  And, in the absence of evidence from Defendant to rebut Plaintiff's

12 evidence regarding the magnitude of the injunctive relief obtained, the Court will not

13 speculate as to the precise dollar value of that relief.  Thus, without more, the Court

14 cannot say that the total amount of fees requested is intrinsically unreasonable in relation

15 to the results Plaintiff obtained.  <u>See</u> <u>Hensley</u>, 461 U.S. at 436.

16

17     **C.**   **<u>Propriety of the Documentation of Counsel's Hours</u>**

18      According to Defendant, the hours requested have not been adequately

19 documented.  Defendant contends that Plaintiff's counsel: (1) "generally summarized all

20 of the hours and activities they undertook" and supplied non-contemporaneous records

21 that were "created after the fact" (*Def.'s Opp'n* 2:13–15, 4:10–11); and (2) "repeatedly

22 use[d] a disfavored billing method known as block billing."  (*Id.* at 5:16–17.)  The Court

23 addresses each of these issues below.[8]

24

---

25      [8] In addition to these contentions, Defendant also argues that many of Plaintiff's attorneys' time

26 records "contain indecipherable words or letters that are vague and do not accurately reflect a clear and

27 concise method of time keeping or reporting." (*Def.'s Opp'n* 3:20–22.) Mr. Brancart has since submitted a revised time record that clarifies the meaning of those abbreviations.  (*See Brancart Decl. sans Abbrev.*

28 [Doc. 70-2].)  Thus, to the extent that this previously constituted an obstacle, the Court is satisfied that it has been remedied.

1        1.     *Time summaries and contemporaneity of records*

2           In support of his contention that Plaintiff's counsel improperly summarized hours

3 and failed to provide contemporaneous time-keeping records, Defendant cites

4 Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211,

5 1230–31 (9th Cir. 1997).  According to Defendant, that case stands for the proposition

6 that "a district court may abuse its discretion by relying on summaries[] of billing records

7 in declarations that are not sufficient to distinguish time spent on different claims."

8 (*Def.'s Opp'n* 12:2–7.)  Plaintiff, however, maintains that counsel *did* keep regular time

9 sheets, and that counsel's submissions reflect contemporaneous records that were not

10 "reconstructed" after the fact.  (*Pl.'s Reply* 4:19–25.)  Moreover, Plaintiff contends that

11 Genesis does not apply in this instance because Plaintiff did not fail to prevail on her

12 claims.  (*Id.* at 3:25–4:4.)  The Court agrees with Plaintiff.

13           In Genesis, a manufacturer filed a lawsuit, consisting of twelve causes of action,

14 against multiple defendants.  122 F.3d at 1214–16.  After prevailing on two different

15 partial summary judgment motions, the defendants, under a federal fee-shifting statute,

16 filed separate motions to recover attorney's fees on some of the plaintiff's claims.  Id. at

17 1216.  In reviewing the district court's award of fees to one of the prevailing defendants,

18 the Ninth Circuit explained that "[g]iven the instant circumstances . . . the district court

19 abused its discretion by concluding that the summaries submitted in conjunction with

20 the declaration of [the defendant's] counsel were sufficient to determine exactly how

21 many hours [the defendant] spent solely defending against [the compensable claims]."

22 Id. at 1231.  The court then noted that "in these circumstances, we believe that the

23 district court erred in not requiring [the defendant] to submit its original time records

24 and billing statements so that [the plaintiff]—and the district court—could determine

25 whether the fees being claimed were truly for time spent in defending against the

26 [compensable] claims."  Id.

27           The circumstances that existed in Genesis are not present in the instant case.

28 Here, it cannot be said that Plaintiff was successful on some of her claims and

1    unsuccessful on others.  The Court's review of the record indicates that the parties

2    reached a settlement as to *all* of Plaintiff's claims, none of which had previously been

3    waived or otherwise disposed of through any consequential motion practice.  (*CMC*

4    *Minute Entry* 4:1–25.)  As a result, this case does not require the type of fee segregation

5    that the Ninth Circuit required in <u>Genesis</u>.  <u>See Genesis</u>, 122 F.3d at 1230–31 (citing

6    <u>Hensley</u>, 461 U.S. at 434–37).[9]  The Court accepts counsel's records as being sufficiently

7    detailed and reflective of the work completed.  <u>See United Steelworkers of Am. v. Ret.</u>

8    <u>Income Plan for Hourly-Rated Employees of ASARCO, Inc.</u>, 512 F.3d 555, 565 (9th Cir.

9    2008).  The Court need not parse the time counsel allocated toward certain claims versus

10   others.  Therefore, this does not appear to be a basis for a reduction of the hours sought.

11

12        2.    *Block Billing*

13        Defendant also contends that the number of hours for which Plaintiff seeks

14   attorney's fees is unreasonable because Mr. Brancart employed a method of billing

15   known as "block billing."[10]   (*Def.'s Opp'n* 12:8–10.)   In support of this argument,

16   Defendant points to a number of examples in Mr. Brancart's time records, and cites

17   <u>Welch v. Metropolitan Life Insurance Co.</u>, 480 F.3d 942, 948 (9th Cir. 2007) for its

18   discussion of the improprieties of block billing.  (*Def.'s Opp'n* 12:11–25; *see Sall Decl.* ¶

19   9.8.)  According to Plaintiff, the entries in Mr. Brancart's records that Defendant has

20   identified as improper "are not the kind of 'block billing' justifying across the board

21   reductions in time."  (*Pl.'s Reply* 7:28–8:1.)

22        "'Block billing' is 'the time-keeping method by which each lawyer and legal

23   assistant enters the total daily time spent working on a case, rather than itemizing the

24

25        [9] The Court notes that even if this were such a case, Defendant has not made an adequate

26   showing of a distinction between the claims that would require segregation and the claims for which
     Plaintiff can properly seek attorney's fees.

27        [10] Defendant advances his block billing argument only with respect to Mr. Brancart.  (*See Def.'s*

28   *Opp'n* 12:8–25.)  Therefore, the Court does not address Mr. Butler's or Mr. Gardner's time records in
     the context of this issue.

12cv2860w

1   time expended on specific tasks.'" <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 945 n.2

2   (9th Cir. 2007) (quoting <u>Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.</u>, 82 F.3d 1533,

3   1554 n.15 (10th Cir. 1996)). Block billing is generally disfavored because it complicates

4   a court's assessment of the reasonableness of individual tasks performed by attorneys.

5   <u>See id.</u> at 948. However, a block-billed entry is only problematic where it "'obscure[s] the

6   nature of some of the work claimed.'" <u>Kittok v. Leslie's Poolmart, Inc.</u>, 687 F. Supp. 2d

7   953, 964 (C.D. Cal. 2009) (alteration in original) (quoting <u>Christian Research Inst. v.</u>

8   <u>Alnor</u>, 165 Cal. App. 4th 1315, 1325 (2008)).

9         According to Plaintiff, "block billing that 'involves the grouping of highly related

10  tasks that rarely cover more than a few hours[]' does not call for a reduction in fees."

11  (*Pl.'s Reply* 8:7–9 (quoting <u>Sunstone Behavioral Health, Inc. v. Alameda Cnty. Med. Ctr.</u>,

12  646 F. Supp. 2d 1206, 1217 (E.D. Cal. 2009).) However, using that metric in reviewing

13  Mr. Brancart's time records, the Court estimates that approximately 20% of the hours

14  reported in those records—due to the grouping of various tasks—have complicated the

15  Court's ability assess the reasonableness of the hours expended against the tasks

16  completed. <u>Sunstone</u>, 646 F. Supp. 2d at 1214. Therefore, in addition to Plaintiff's

17  suggested voluntary reduction to Mr. Brancart's hours, the Court, in its discretion, will

18  reduce Mr. Brancart's hours by an additional 2% (20% of total hours multiplied by a

19  10% reduction = 2% overall reduction). <u>See</u> <u>Darling Int'l, Inc. v. Baywood Partners, Inc.</u>,

20  2007 WL 4532233, at *9 (N.D. Cal. Dec. 19, 2007) (noting that, where employed, courts

21  typically make an adjustment of 5% to over 30% in cases involving block billing).

22

23       **D.**   <u>**Overstaffing**</u>

24         Defendant's next contention is that the total number of hours for which Plaintiff's

25  attorneys seek compensation should be reduced to account for overstaffing and

26  duplicative work. (*Def.'s Opp'n* 13:1–14:26; *Sall Decl.* ¶¶ 9.6, 9.10.) According to

27  Defendant, Plaintiff's evidence suggests that her attorneys engaged in excessive

28  consultations and unnecessarily exerted duplicative efforts in attending the same hearings

12cv2860w

1    or working on the same projects. (*Def.'s Opp'n* 13:14–17.)  These contentions, however,
2    fail to persuade.

3        The Ninth Circuit has instructed courts "to examine with skepticism claims that
4    several lawyers were needed to perform a task." <u>Democratic Party of Wash. State v. Reed</u>,
5    388 F.3d 1281, 1286 (9th Cir. 2004).  Indeed, when considering the lodestar calculation,
6    courts must exclude hours that are unnecessary or redundant.  <u>Tahara v. Matson</u>
7    <u>Terminals, Inc.</u>, 511 F.3d 950, 955 (9th Cir. 2007) (quoting <u>Hensley</u>, 461 U.S. at 434).
8    However, "[p]articipation of more than one attorney does not necessarily amount to
9    unnecessary duplication of effort." <u>Reed</u>, 388 F.3d at 1286.  Courts are required to
10    exercise judgment and discretion when examining the circumstances of a particular case
11    and in deciding whether there has been unnecessary staffing or duplication of work. <u>Id.</u>
12    at 1286–87.  At the same time, "[i]t must also be kept in mind that lawyers are not likely
13    to spend unnecessary time on contingency fee cases in the hope of inflating their fees,"
14    given the uncertainty of the ultimate payoff "as to both the result and the amount of the
15    fee." <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1112 (9th Cir. 2008).

16        In arguing that Plaintiff's counsel engaged in excessive consultations, Defendant's
17    contentions appear to be inconsistent.  According to the declaration submitted in
18    support of Defendant's opposition, the fact that a consultation between Plaintiff's
19    attorneys appears on the time records of only one of those attorneys indicates that the
20    time records are inaccurate or "potentially even false." (*Sall Decl.* ¶ 9.6.)  In his
21    opposition, however, Defendant cites <u>Settlegoode v. Portland Public Schools</u>, 2005 WL
22    1899376, at *7 (D. Or. Aug. 9, 2005), for the proposition that "[w]hen attorneys hold a
23    telephone or personal conference, good 'billing judgment' mandates that only one
24    attorney should bill that conference to the client, not both attorneys."  Yet, it seems that
25    Plaintiff's attorneys indeed exercised such billing judgment in deciding not to bill twice
26    for the same consultations. (*See, e.g.*, *Pl.'s Reply* 6:5–11.)  Thus, in light of such billing
27    judgment, and given the apparent contradiction in Defendant's averments, Defendant's
28    contentions fail.

In addition, Plaintiff has provided evidence as to Mr. Brancart's experience and the reasonableness of LASSD's decision to engage Mr. Brancart as co-counsel in Plaintiff's case. (*See Butler Decl.* ¶¶ 4–5; *see also Brancart Decl.*) And, as other courts have determined, it is not unreasonable for an attorney to engage non-local co-counsel with expertise in a particular area of law relevant to a particular case, or for such non-local counsel to seek reasonable fees for travel time. See, e.g., Thalheimer v. City of San Diego, 2012 WL 1463635, at *4 (S.D. Cal. Apr. 26, 2012) (citing cases). The Court is satisfied with Plaintiff's evidence as to the reasonableness of the hours for Mr. Brancart's travel time and involvement in various hearings in this case. In challenging those hours, however, Defendant has failed to meet his burden of rebuttal. (*See Def.'s Opp'n* 13:19–14:18 (failing to cite authority or relevant evidence).) Moreover, to the extent that Plaintiff's attorney's hours can be described as duplicative, they are not egregiously so, and, as discussed below, the Court will apply an across-the-board reduction to address that issue. See Moreno, 534 F.3d at 1112 (noting that "the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation").

### E.    Time Spent on the Anti-SLAPP Motion

Defendant challenges the time for which Mr. Brancart worked on the "SLAPP matter." (*See Def.'s Opp'n* 15:1–13.) Defendant points to Mr. Brancart's time entries dated 1/28/2013, 1/30/2013, 2/6/2013, and 2/8/2013 as examples of time spent on that matter. (*Id.* at 15:10–11; *see also Sall Decl.* ¶ 9.9.) According to Defendant, time for such work is not compensable because it constitutes a duplication of time for work that has already been compensated. (*Def.'s Opp'n* at 15:7–8.) Alternatively, Defendant suggests that such time should not be compensated because fees regarding the anti-SLAPP proceedings have already been separately adjudicated. (*Id.* at 15:11–12.)

Plaintiff counters that the anti-SLAPP fee-shifting statute does not preclude her from recovering Mr. Brancart's anti-SLAPP fees under the fair housing fee-shifting

1   statutes. (*Pl.'s Reply* 8:23–26 (citing Cal. Civ. Proc. Code § 425.16(c)).) In support of this

2   contention, Plaintiff cites <u>Cabrales v. County of Los Angeles</u>, 935 F.2d 1050, 1052 (9th

3   Cir. 1991), wherein the Ninth Circuit held that "plaintiffs are to be compensated for

4   attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit."

5   (*Pl.'s Reply* 8:26–9:1.) Although both parties' arguments are largely unconvincing, the

6   Court—for the reasons stated below—declines to award Plaintiff attorney's fees for any

7   time spent by Mr. Brancart on the anti-SLAPP matter.

8         As an initial matter, the Court finds Plaintiff's citation to <u>Cabrales</u> to be

9   unavailing. Plaintiff states, without elaboration, that Mr. Brancart's work on the anti-

10   SLAPP motion "contributed to plaintiff's ultimate victory in this case." (*Pl.'s Reply*

11   9:1–2.) However, without more, this conclusory assertion fails to elucidate how Mr.

12   Brancart's work on the anti-SLAPP motion—which was filed in response to Defendant's

13   defamation counterclaim—contributed to Plaintiff's "ultimate victory" on her own claims

14   within the purview of that phrase's meaning in <u>Cabrales</u>.

15         Additionally, it is worth noting that in arguing against an award of fees for work

16   on the anti-SLAPP motion, Defendant again mischaracterizes Plaintiff's motion. In his

17   opposition, Defendant seems to argue that Plaintiff's motion excludes *all* time allocated

18   to the anti-SLAPP matter. (*Def.'s Opp'n* 10:5–6.) It does not. What Plaintiff's motion

19   *does* exclude, however, is the time *LASSD* spent on the anti-SLAPP motion. (*Mem. P&A*

20   *ISO Pl.'s Mot. Fees* 6:16–17 ("Using this formula, excluding time spent on the anti-SLAPP

21   motion *by LASSD* . . . .") (emphasis added).) In other words, the instant motion does not

22   purport to exclude time that Mr. Brancart spent on the anti-SLAPP motion.

23         Still, another source *does* purport to exclude such time. In a May 2013 declaration

24   submitted by Mr. Brancart in support of Plaintiff's first motion for attorney's fees, Mr.

25   Brancart declared that his firm "does not see[k] to recover the several hours of time spent

26   by me in consultation with Mr. Butler on the SLAPP motion or on reviewing and

27   revising that motion." (*Brancart Decl. ISO Mot. Anti-SLAPP Fees* [Doc. 31-4] ¶ 4.) That

28   statement is clear and is unaccompanied by any temporal qualification, such as "at

present" or "at this time." (*Id.*)

In light of the above, the Court will reduce the fee award by the number of hours Mr. Brancart spent on the anti-SLAPP matter, which Defendant has indicated as amounting to at least 4.6 hours. (*See Def.'s Opp'n* 15:10–11 (providing examples).) Based on the Court's review of Mr. Brancart's time records, Mr. Brancart spent an additional 1.7 hours on the anti-SLAPP matter beyond the 4.6 hours to which Defendant has pointed.[11]   Thus, it appears that Mr. Brancart spent a total of 6.3 hours on the anti-SLAPP matter, and the Court reduces Plaintiff's fee award accordingly.

### F.   <u>Plaintiff's Request for Fees on Fees</u>

Plaintiff also seeks additional fees and costs for time that her attorneys have allocated toward preparing the reply brief and concurrent motion to strike Mr. Sall's declaration. (*See Pl.'s Reply* 9:6–23.)   Specifically, Mr. Butler seeks an additional 6.2 hours, for a total of $1,767.00, and Mr. Brancart seeks an additional 16.3 hours, for a total of $7,335.00. (*See id.*)   According to the Court's review of the relevant case law, such time is compensable. <u>See</u> *In re* <u>Nucorp Energy, Inc.</u>, 764 F.2d 655 (9th Cir. 1985) (citing cases and noting that the Ninth Circuit and other circuit courts have "concluded that statutory fee award provisions should be read as authorizing compensation for time spent litigating fee awards"); <u>see also</u> <u>Clark v. City of Los Angeles</u>, 803 F.2d 987, 992 (9th Cir. 1986) (citations omitted).   Still, the Court must determine the reasonableness of the fees sought. <u>Hensley</u>, 461 U.S. at 424; <u>see also</u> 42 U.S.C. § 3613(c)(2).

In viewing the declarations submitted by Mr. Butler and Mr. Brancart in support of Plaintiff's reply, the Court concludes that the hours sought are reasonably related to the tasks completed. (*See Brancart Reply Decl.* [Doc. 70-1] ¶ 9; *See Butler Reply Decl.* [Doc.

---

[11]   This additional 1.7 hours includes time Mr. Brancart spent on the anti-SLAPP matter on 3/22/2013, 8/2/2013, and 11/1/2013. (*See Brancart Time Records* [Doc. 62-4] 5–9.)   Because the entry for 11/1/2013 includes various tasks, the Court is unable to segregate the anti-SLAPP time from the rest of the entry. (*Id.* at 9.)   Thus, the Court will exclude the entire 0.9 hours sought for work on that date.

70-3] .)   While there does appear to be some duplication of efforts in the time counsel spent reviewing various documents, such duplication appears to be minor.  Thus, as discussed below, the Court will apply the same across-the-board reduction to the fees sought by Mr. Butler and Mr. Brancart for their work on Plaintiff's reply brief.  However, because Plaintiff did not prevail on her motion to strike Mr. Sall's declaration, the Court will reduce Mr. Butler's time by 4 hours—the number of hours related to his work on that motion.  See Hensely, 461 U.S. at 436.

### G.   Award Fee Summary

In Plaintiff's motion for fees, Plaintiff's calculation of the lodestar figure included a proposed 7.5% reduction "for any duplication of effort or unreasonable time."  In the documents supporting Plaintiff's reply brief, however, Plaintiff appears to now suggest a 10% reduction in those hours.  (*See Brancart Reply Decl.* ¶ 8.)  The Court accepts this figure as appropriate for addressing any excess that exists in the lodestar amounts for the hours that Plaintiff seeks.  Moreno, 534 F.3d at 1112.  Accordingly, the Court will apply a 10% reduction to the pre-fee motion hours sought by Mr. Brancart, Mr. Butler, and Mr. Gardner.  And, as discussed above, the Court will reduce Mr. Brancart's pre-fee motion hours by an additional 2% to account for the limited block-billed entries in his time records.  The Court will also reduce Mr. Brancart's pre-fee motion time by 6.3 hours—the amount of time Mr. Brancart allocated to work on the anti-SLAPP matter.  Moreover, with respect to the hours sought for work on Plaintiff's reply brief, the Court will reduce Mr. Butler's time by the 4 hours spent on Plaintiff's motion to strike, and will apply an across-the-board reduction of 10% to both Mr. Brancart's and Mr. Butler's hours.  Thus, the Court finds Plaintiff entitled to an attorney fee award as follows:

*//*

*//*

*//*

*//*

## Brancart & Brancart (Mr. Brancart)

| | Total Hours | Reduction | Adjusted | Rate | Total |
|---|---|---|---|---|---|
| Pre-Fee Motion Work | 147.7 | - 6.3 anti-SLAPP hours and 12% reduction | 124.4 | $450/hour | $55,980.00 |
| Fee Motion | 13.0 | — | — | $450/hour | $5,850.00 |
| Reply Brief | 16.3 | 10% reduction | 14.7 | $450/hour | $6,615.00 |
| Paralegal (Gardner) | 33.2 | 10% reduction | 29.9 | $95/hour | $2,840.50 |
| | | | | | $71,285.50 |

## LASSD (Mr. Butler)

| | Total Hours | Reduction | Adjusted | Rate | Total |
|---|---|---|---|---|---|
| Pre-Fee Motion Work | 118.0 | 10% reduction | 106.2 | $285/hour | $30,267.00 |
| Fee Motion | 1.0 | — | — | $285/hour | $285.00 |
| Reply Brief | 6.2 | - 4.0 strike motion hours and 10% reduction | 2.0 | $285/hour | $570.00 |
| | | | | | $31,122.00 |

//
//
//
//
//
//

12cv2860w

1    **IV.**    CONCLUSION AND AWARD

2        For the foregoing reasons, the Court **DENIES** Plaintiff's motion to strike [Doc.

3    69] and **GRANTS-IN-PART** Plaintiff's motion for attorney's fees [Doc. 62].  The Court

4    awards Plaintiff $107,524.63 in fees and costs.[12]

5        **IT IS SO ORDERED.**

6

7    DATED:  November 13, 2014

8                                                          _____

9                                                          Hon. Thomas J. Whelan
                                                           United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   ────────────────────

28        [12] This figure includes the $2,931.45 in costs incurred by Brancart & Brancart, and the
     $2,185.68 in costs incurred by LASSD.  (*See Pl.'s Reply* 9:18–23.)

12cv2860w